IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISAAC PEÑA, R21449, ) | |
| ) | No. 07 C 7199 |
| Plaintiff, ) | |
| ) | Hon. George M. Marovich |
| v. ) | Judge Presiding |
| ) | |
| TERRY MCCANN, et al., ) | |
| ) | |
| Defendants. ) | |

**ANSWER TO PLAINTIFF'S COMPLAINT**

NOW COME the Defendants[1], JAMES BURZINSKI, MARTHA MALDONADO, TERRY MCCANN, DONALD QUARLES, and EVA AGUERO, by and through their attorney, LISA MADIGAN, Attorney General of the State of Illinois, and hereby answer Plaintiff's complaint[2].

1.  On 9-17-07, placement officer placed me in cell F-233 with Inmate Matthew Foley #B68183. Inmate Foley is a level El Extreme Escape Risk. Inmate Foley is also known to cause bodily harm to other individuals such as; inmates, correctional officers, staff members of I.D.O.C. They (placement officer) should know out of anybody else, to placed me or anybody else with a high aggression level inmate (Foley and I were house in F-house cell 233).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 1.

2.  On 9-18-07, I wrote a letter memo to Warden McCann, telling him that I needed to be removed from cell F-233, because I wasn't sure of my safety. In never heard anything from him, (Warden McCann) not even after the assault that occurred on 9-19-07.

**ANSWER:** Defendant McCann denies the allegations contained in paragraph 2. The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 2.

---

[1] Defendant Brown has not been served to date, and should be dismissed pursuant to Fed.R.Civ.P. 4(m).

[2] Plaintiff's complaint consists of unnumbered paragraphs in a narrative, unorganized fashion. For the convenience of this Court and for the purpose of answering the complaint, Plaintiff's complaint has been broken into manageable numbered paragraphs.

1

3. On 9-19-07, after second gallery, segregation yard was ran. I was in the shower waiting to go to Internal Affairs, when I told Correctional Officer Mr. Brown and Correctional Officer Mrs. Maldonado, to move me from that cell, because Inmate Foley and I were not getting along.

**ANSWER:** Defendant Maldonado denies that Plaintiff requested to be moved from his cell, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 3. The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 3.

4. Correctional Officer Mr. Brown told me to write a (kite) note to Lt. Burzinski and he (Mr. Brown) would make sure he'll (Lt. Burzinski) received it. After I came back from Internal Affairs I gave the note to Correctional Officer Mr. Brown to give to Lt. Burzinski.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 4.

5. On 9-19-07 I wrote the note to Lt. Burzinski telling him that Inmate Foley often talked about stabbing officers and inmates. I also told him to remove me from that cell, but Lt. Burzinski refused!!

**ANSWER:** Defendant Burzinski denies the averments contained in paragraph 5. The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 5.

6. I was taken to Internal Affairs on 9-19-07 to be questioned about another incident that had occurred. That's where I told Internal Affairs/Correctional Officer Mrs. Aguero and Internal Affairs/Correctional Officer Mr. Quarles that I was worried about my safety and that I needed to be moved from that cell. In their statement of facts I told them I was afraid that Inmate Foley might try to do something to me. Internal Affairs/Correctional Officer Mrs. Aguero and Internal Affairs/Correctional Officer Mr. Quarles blamed it all on placement office and told me they couldn't do anything about it.

**ANSWER:** Defendant Aguero admits that Plaintiff complained about his cellmate on September 19, 2007, but denies that she told Plaintiff that she "couldn't do anything about it," and denies that she failed to take any action, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 6. Defendant Quarles is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 6. The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 6.

7. On September 20, 2007, I was waken up by Inmate Foley talking to our next door neighbor in cell F232. His name is Joseph Herman (the one that issued the shank to inmate Foley). It was around 6:40 a.m. when I jumped down from my bunk and told Inmate Foley I was going to use the toilet. I hung a curtain up. After taking care of my necessities I washed my hands; brushed my teeth and took the curtain down. That's when Inmate Foley attacked me with a shank (made out of glass). He swung his arm more than enough and cut me twice in the arm and once on my chest. I wrestled with my attacker for some minutes, til I was able to trip him and end on top of him.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 7.

8. By that time Correctional Officer Mrs. Maldonado was doing the 7 o'clock a.m. count, she heard the struggles and racist remarks coming from Inmate Foley. Correctional Officer Mrs. Maldonado ran to cell F-233 and called a 10/10.

**ANSWER:** Defendant Maldonado admits responding to Plaintiff's cell and calling a 10-10 during her morning count, but denies the remaining averments contained in paragraph 8. The remaining Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 8.

9. I was taken to Health Care Unit to get treatment from my wounds (cuts). That's the place where Internal Affairs took several pictures of my ruptures and took my statement.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 9.

10. I tried to stop the current affairs before they happened, but no one heard me until I found myself stabbed September 20, 2007.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 10.

11. I, Isaac Pena (R-21449) warned the following individuals; Warden McCann of Stateville Correctional Center, Internal Affairs/Correctional Officer Mrs. Aguero, Internal Affairs/Correctional Officer Mr. Quarles, Lt. Burzinkski, Correctional Officer Mrs. Maldonado, Correctional Officer Mr. Brown...all of them from Stateville Correctional Center (I.D.O.C.)

**ANSWER:** The Defendants each deny that Plaintiff "warned" each of them, but are otherwise without information or knowledge sufficient to form a belief as to the remaining averments contained in paragraph 11.

12. I had told all the above names and ranks (positions) that I didn't feel safe being around Inmate Foley and that I needed to be moved from that cell. But all of the above names ignored me and kept me in that unsafe environment with an individual (Inmate Foley) who have a

history of causing great bodily harm to people.

**ANSWER:**    Defendants deny the averments contained in paragraph 12.

## **RELIEF**

Since my life was in danger due to the lack of laziness and ignorance and even though I told them ahead of time, they did nothing. This what I want for my relief requested;

Warden McCann, $150,000.00 and rank dropped because he obviously can't hold a job of a warden. I could've been dead right now.

Internal Affairs c/o Mrs. Aguero, $40,000.00 for not taking head to what I had said and for putting me back in a danger zone.

Internal Affairs c/o Mr. Quarles, $40,000.00 for putting me back in a danger zone (cell) and not listening to me.

Lt. Burzinski, $70,000.00, for leaving me in that cell when I told him my life was in danger. Drop his Lt. Rank.

Correctional Officer Brown $15,000.00 for not working fast enough when he could've gave the note to Lt. Burzinski or Internal Affairs and I could've been moved instantly.

Correctional Officer Mrs. Maldonado, $15,000.00, for not following procedures to warn a St. or a Lt. after someone told them their cell wasn't a safe environment.

Placement Officer, $50,000.00, for not acknowledging my life was going to be in jeopardy after placing me in that cell.

**ANSWER:**    Defendants deny that Plaintiff is entitled to monetary relief, injunctive relief, or any relief whatsoever.

## **GENERAL DENIAL**

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### Second Affirmative Defense

Plaintiff has failed to exhaust his administrative remedies prior to filing suit in federal court. Therefore, Plaintiff's complaint should be dismissed.

## JURY DEMAND

Defendants demand a trial by jury on all issues herein triable.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By: s/ Matthew M. Smith
MATTHEW M. SMITH
Assistant Attorney General
General Law Bureau
100 West Randolph Street, 13th Fl.
Chicago, Illinois 60601
(312) 814-4451